UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IAN K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01918-SEB-MPB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 10). Plaintiff Ian K.[1] seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 14; Docket No. 15; Docket No. 16). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Ian K. is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**I.    PROCEDURAL BACKGROUND**

On January 13, 2017, Ian K. filed an application for DIB under Title II and SSI under Title XVI of the Social Security Act, alleging disability beginning September 5, 2015. (Docket

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

No. 11-5 at ECF p. 2; Docket No. 11-5 at ECF p. 9). His applications were denied initially and upon reconsideration. (Docket No. 11-4 at ECF pp. 1-95). On December 17, 2018, Administrative Law Judge, Elias Xenos, conducted a video hearing at which Ian, his counsel, and an impartial vocational expert appeared and testified. (Docket No. 11-2 at ECF pp. 34-59). On March 14, 2019, the ALJ issued a decision finding that Ian was not disabled. (Docket No. 11-2 at ECF pp. 16-28). On May 27, 2020, the Appeals Council denied Ian's request for review, thereby rendering the ALJ's decision the agency's final decision for purposes of judicial review. (Docket No. 11-2 at ECF pp. 2-4). On July 21, 2020, Ian timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying his benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

Ian raises four separate reversible errors. First, he argues that the ALJ failed to properly incorporate his moderate limitations in concentration, persistence, or pace in the hypothetical questions to the vocational expert ("VE") or in the ALJ's residual functional capacity. Second, he argues that the ALJ failed to abide by the requirements of SSR 16-3p in the subjective symptom evaluation of his individual statements in that the ALJ failed to consider several factors. Third, Ian argues that, under the treating physician rule, the ALJ should have given more weight to the opinions of his treating sources, nurse Kleinhenz and therapist Newell, and that in assigning only little weight the ALJ did not address the appropriate checklist of factors to provide sound justification for dismissing the importance of these opinions. Finally, Ian argues that even if he was able to obtain a job, the VE testified that a person absent two days a month—as Ian would be required due to his mental health treatment schedule—would be considered unacceptable absenteeism and the ALJ failed to address this pertinent issue within the decision.

## II. STANDARD FOR PROVING DISABILITY[2]

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *Compare* 20 C.F.R. § 404.1520(a)(4)(i)-(v) *with* 20 C.F.R. § 416.920(a)(4)(i)-(v). The undersigned will not usually reference the parallel section but will take care to detail any substantive differences that apply to the case.

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III.    STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

4

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV. FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Ian was not disabled. (Docket No. 11-2 at ECF p. 28). At step one, the ALJ found that Ian met the insured status requirements through March 31, 2019 and had not engaged in substantial gainful activity[3] since September 5, 2015, the alleged onset date. (Docket No. 11-2 at ECF p. 18). At step two, the ALJ found that Ian had the following "severe impairments: bipolar disorder, borderline personality disorder, generalized anxiety disorder, major depressive disorder, social pragmatic communication disorder, history of alcohol dependence and somatic dysfunction of lumbar and pelvis regions." (Docket No. 11-2 at ECF p. 18). The ALJ also found Ian's gastritis was a non-severe medically determinable impairment. (Docket No. 11-2 at ECF p. 19). At step three, the ALJ found that Ian did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 11-2 at ECF p. 18). As to the "paragraph B" criteria, the ALJ found that Ian had moderate limitations in three areas—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace—and had

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

mild limitation in the fourth area—adapting or managing oneself. (Docket No. 11-2 at ECF pp. 20-21). After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant may never work around unprotected heights or hazardous machinery. Due to a combination of severe mental deficits, work is limited to simple, routine tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions with few, if any, work-place changes. The claimant can have only brief, superficial interaction with the general public, and occasional interaction with co-workers and supervisors with no tandem tasks. The claimant may never work in jobs where open alcoholic beverages are served.

(Docket No. 11-2 at ECF p. 21). At step four, the ALJ found that Ian was unable to perform any past relevant work. (Docket No. 11-2 at ECF pp. 26-27). At step five, considering Ian's age, education, work experience, and RFC, as well as the VE's testimony, the ALJ found that Ian could perform other work through the date of the decision with jobs existing in significant numbers in the national economy. (Docket No. 11-2 at ECF pp. 27-28).

## V.  DISCUSSION

Ian argues that the ALJ failed to properly address Ian's moderate limitations in maintaining concentration, persistence or pace ("CPP") in the hypothetical to the vocational examiner and in the ultimate RFC assessment. (Docket No. 14 at ECF pp. 17-21). Specifically, he asserts that the hypothetical and the adopted RFC run afoul of repeated Seventh Circuit case law that has found CPP limitations are not accounted for by terms like "simple, repetitive tasks" and "no fast-paced production." (*Id.*).

The Commissioner responds that Ian does not identify any acceptable medical source opinions or other objective evidence that would support greater restrictions than those assigned by the ALJ with regards to CPP. (Docket No. 15 at ECF pp. 14-17). The Commissioner further

6

argues that this case is distinguished from the line of cases cited by Ian because here the ALJ crafted a very specific mental residual functional capacity, relying on Ian's function reports to the agency, his testimony, medical records and medication history, history of alcoholism and periods of sobriety, weekly treatment with individual and group therapy, outpatient medication management that improved his symptoms when followed, and mild findings on mental status examinations with his treatment providers. (Docket No. 15 at ECF p. 16). Ian's reply brief does not meaningfully address the Commissioner's arguments. (Docket No. 16).

In the Step Three analysis, the ALJ found that Ian had moderate limitations in CPP. (Docket No. 11-2 at ECF p. 20). The ALJ's RFC limited Ian to "simple, routine tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions with few, if any, work-place changes." (*Id.* at ECF p. 21). During Ian's disability hearing, the ALJ posed a hypothetical question to the VE using language nearly identical to his eventual mental RFC assessment. The ALJ posed the following hypothetical, in relevant part, to the VE—". . .through a combination of severe mental deficits will prevent simple routine tasks in a work environment free of fast-paced production requirements, and while making simple, work-related decisions with few, if any, work place changes . . . is past work available?" (Docket No. 11-2 at ECF p. 56). While the VE answered that past work was not available, the VE answered the ALJ's next question, regarding other jobs in the national economy being available, affirmatively. (*Id.*).

I agree with Ian that the ALJ did not adequately account for his moderate CPP limitations in a manner consistent with Seventh Circuit precedent. When crafting a claimant's RFC, an ALJ must incorporate all of a claimant's limitations in the assessment, including those in CPP. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The same goes for the hypothetical posed to the

vocational expert ("VE"). *Id.* CPP refers "to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of task commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(3). Both "'the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in [CPP]." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Generally, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of [CPP], and thus, alone, are insufficient to present the claimant's in this area." *Id.* This is because the terms "simple, routine, and repetitive tasks" refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days, but "the speed at which work can be learned is unrelated to whether a person with mental impairments— i.e., difficulties maintaining [CPP]—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). *See also Varga*, 794 F.3d at 815 ("It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed.").

In this case, the ALJ erred in the RFC assessment and accompanying hypothetical to the VE by failing to account for step three findings of moderate limitations in CPP. The ALJ recognized that "the claimant reported that he could only pay attention for three minutes in the initial adult function report," but also cited examination records where "the claimant was often

8

alerted and oriented and demonstrate adequate attention. (Docket No. 11-2 at ECF p. 20). Considering "the overall evidence," the ALJ assigned Ian to moderate limitations in CPP at Step three. In justifying the RFC assessment, the ALJ explained that the RFC's limitations "[1] to simple, routine, and repetitive tasks in a work environment [2] free of fast-paced production requirements, [3] involving only simple, work-related decisions with few, if any, work-place changes" accounted for Ian's "decreased ability to concentrate from his mental impairments." (Docket No. 11-2 at ECF p. 26). However, the first restriction does not adequately address Ian's moderate limitations in CPP. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("we have 'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in [CPP]'"). In addition, the ALJ cited no evidence supporting the finding that Ian's memory problems are limited to complex and detailed tasks.

The second restriction regarding being free of fast-paced production does not adequately address pace, as the Seventh Circuit addressed in *Varga* when it explained that, without defining "fast pace" "it would have been impossible for the VE [or the reviewing court] to assess whether a person with Varga's limitations could maintain the pace proposed." 794 F.3d at 815. Finally, the third restriction's first component regarding simple, work-related decisions, again focuses on unskilled work. With its reference to "few, if any, work-place changes" deals with workplace adaption, not CPP. *Mischler v. Berryhill*, 766 Fed. Appx. 369, 376 (7th Cir. 2019) ("only occasional changes in the work setting" "primarily deals with workplace adaptation, rather than [CPP]"); *Varga*, 794 F.3d at 815 ("'few if any workplace changes' with limited 'interaction with coworkers and supervisors' deals largely with workplace adaptation, rather than [CPP]").

9

The Commissioner argues that Ian does not suggest in his briefing any particular functional limitation that the ALJ should have included in the RFC. In support of the argument, the Commissioner directs the court to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) in which the Seventh Circuit affirmed a denial of benefits in part on this basis. While I tend to agree Ian's opening brief was underdeveloped as to the record's application to these legal standards,[4] it is not fatal to the argument. That is because the Seventh Circuit has subsequently made clear that *Jozefyk*'s holding was limited to the particular facts of that case. *Crump*, 932 F.3d at 571 ("In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to [CPP], and the medical evidence did not otherwise support any such limitations."). But here, there was testimony from Ian about his inability to concentrate, as well as other objective medical evidence relating to his mental conditions. At the hearing the ALJ questioned Ian regarding his inability to complete his job at Panera Bread. (Docket No. 11-2 at ECF p. 43). The ALJ asked "were you experiencing [burnout] because of the pace of the work and the volume of people?" to which Ian answered "Yes, it got—it was very demanding and large crowds of people and coworkers." (*Id.*). And while the ALJ noted that Ian reported in his initial adult function report that he could only pay attention for three minutes, he discounted that based upon the objective evidence, including four different examinations Ian showed adequate attention. (Docket No. 11-2 at ECF p. 20). That conclusion, by itself, may not have been problematic. But, in discounting Ian's therapist's, Ben Newell,[5] "checklist" opinion because it was unsupported by the overall record the ALJ failed to

---

[4] Ian does at least identify Ben Newell's note discussed below in his opening brief.
[5] I agree with the Commissioner that neither Newell nor APRN Kleinhenz were entitled to the special deference given to a treating doctor under the treating physician rule. This case was filed before March 27, 2017, and thus the prior regulations are still applicable. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating

10

address other portions of the same opinion that did provide an explanation and supported Ian's concentration statements. For instance, Newell answered "[d]escribe the *clinical findings* including results of mental status examination that demonstrate the severity of your patient's mental impairment and symptoms." (Docket No. 11-7 at ECF p. 523) with:

> Client's presentation is consistent with diagnosis of Bipolar Disorder, Generalized Anxiety Disorder, and Borderline Personality Disorder. Client struggles with mood difficulties which often related to situational stressors and is exacerbated low self-esteem. Client often presents with clean hygiene, quiet speech, flat affect, and sad mood at baseline. *Frequently, client seems to lose focus. Questions often have to be repeated and/or rephrased for client to respond appropriately.*

(*Id.* at ECF p. 524).

In contrast to *Jozefyk*, here there is evidence of unaddressed clinical findings that support Ian's CPP allegations. On remand, the ALJ must properly account for Ian's moderate limitations in concentration, persistence, and pace in the mental RFC and hypothetical to the VE.

Having found remand is necessary due to the issues discussed above, I decline to address Ian's remaining assignments of error.

### VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends the Court **REMAND** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections

---

sources. . ."); § 404.1527(a)(2) ("Treating source means your own acceptable medical source . . ."); *Stewart v. Colvin*, 2016 WL 81779, at *7 (C.D. Ill. Jan. 7, 2016) (citing 20 C.F.R. § 404.1513(a)) ("The regulations define acceptable medical sources as "[l[icensed physicians," "[l]icensed or certified psychologists," "[l]icensed optometrists," "[l]icensed podiatrists," and "[q]ualified speech-language pathologists.")

within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

      **SO RECOMMENDED** the 13th day of August, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.